**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DONNA BOONE AND DENNIS BOONE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1613 |
| | § | |
| SAFECO INSURANCE COMPANY | § | |
| OF INDIANA and GEORGE ECHOLS, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit to recover insurance proceeds and damages under the Texas Insurance Code, §§ 541.060 and 541.061. The insurer, Safeco Insurance Company of Indiana ("Safeco"), has moved to compel appraisal under the homeowners policy issued to the insureds, Donna and Dennis Boone. (Docket Entry No. 11). The Boones oppose the motion on the ground that Safeco waived its contractual right to seek appraisal. (Docket Entry Nos. 22, 28). Based on a careful consideration of the record and the applicable law, as well as the arguments of counsel, this court finds that it is unclear from the present record when Safeco was on notice that there was an appraisable dispute, which is necessary to determine whether the Boones have met their burden of showing that Safeco waived its appraisal right. As a result, on the present record, this court neither compels appraisal nor holds that it cannot be compelled. The reasons for this ruling, which the court recognizes is satisfying to no one, are explained below.

**I.    Background**

Hurricane Ike hit the Gulf Coast in September 2008. As a result of the hurricane, the Boones suffered damage to their home. In this lawsuit, the Boones allege that the roof, fence, windows,

1

satellite dish, sheetrock, and home contents were damaged and that Safeco paid only some of the covered damages caused by the hurricane.  (Docket Entry No. 29 at 3).

The Boones submitted a claim to Safeco under the policy on September 15, 2008.  (Docket Entry No. 34, Ex. C).  George Echols, the Safeco insurance adjuster assigned to the claim, inspected the home and contents on October 3, 2008.  (Docket Entry No. 34 at 1).  On October 5, 2008, Safeco sent the Boones a letter with an itemized estimate of the covered repair costs.  (Docket Entry No. 22, Ex. A-1).  The letter accompanying the estimate stated as follows:

> A SAFECO representative has issued a check for damages as outlined on the estimate of repair.  The check for damages will arrive under separate cover.  You will note depreciation has been withheld from this payment under the replacement cost extension of coverage.  You are entitled to recover the depreciation that has been withheld up to the cost of repair upon the completion of these repairs.  The only exception to the replacement cost extension of coverage is if there is depreciation withheld for the replacement of exterior fences.  The policy does not allow replacement cost coverage for the replacement of fences.

> In order to claim the depreciation that is owed the policy requires that you send us a copy of the invoice for repairs to your home.  **WE WILL REIMBURSE YOU FOR UP TO THE AMOUNT ACTUALLY SPENT LESS YOUR DEDUCTIBLE, BUT NOT TO EXCEED THE AMOUNT ALLOWED ON THE ESTIMATE UNLESS THERE IS PRIOR APPROVAL BY SAFECO.**

> Please keep all invoices for repairs.  You have 365 days from the date of this loss to claim the depreciation under the replacement cost coverage.  Should you require an extension of time, you must notify us in writing.  Please fax these invoices to [number], or mail to [address].

> The estimate is based on the repairs we believe necessary to restore your damaged property and the costs are current with today's market.  You should share this estimate with the company you hire to conduct the repairs.  If the company has any questions or finds additional damages, please contact SAFECO immediately.  The policy requires

2

that we agree to all supplements before repairs begin.

(*Id.*).  The estimate provided figures for the replacement-cost value, depreciation, and actual cash value for the "dwelling," "other structures," and "contents."  (*Id.* at 7).  The estimate included a deductible of $649.00 for the "dwelling," a deductible of $4,391.00 for "other structures," and no deductible for contents.  (*Id.* at 1).[1]  The estimate summary for the dwelling was a total-replacement-cost value of $677.39, which, less the $28.39 in recoverable depreciation, resulted in an actual cash value of $649.00.  Subtracting the deductible resulted in a claim of $28.39 in recoverable depreciation for the dwelling.  (*Id.* at 8).  The estimate summary for "other structures"—the exterior fence—stated a replacement-cost value of $8,074.54 and an actual cash value of $4,402.27 (the replacement cost less the non-recoverable depreciation).  Subtracting the $4,391.00 deductible resulted in a net claim of $11.27.  (*Id.* at 9).  One of the entries for the fence had the following notation: "ALLOW TO REPLACE INSURED'S HALF OF CO-OWNED WOODEN FENCE."  (*Id.* at 5).  The estimate summary for contents was a replacement-cost value of $1,475.08; an actual cash value of $118.53 (the replacement-cost value less the $1,356.55 in recoverable depreciation); and a net claim of $1,475.08 if the Boones submitted a claim for depreciation.  (*Id.* at 10).

The estimate included the following statement:

---

[1]  The "dwelling" estimates included charges for "R&R Window screen," "Reglaze window," "R&R 5/8" drywall," "Seal/prime the surface area," "Seal & texture paint the ceiling," "Mask and prep for paint," "Content Manipulation charge," and "Protect contents."  (Docket Entry No. 22, Ex. A-1 at 3–4).  The "contents" estimates included charges for "Window blind - horizontal or vertical - Large" and "R&R Window screen."  (*Id.* at 3).  The "contents" estimate also included "Electrician - per hour," which had a notation: "ALLOW TO DETERMINE CAUSE OF LOSS."  (*Id.* at 6).  The estimate included two entries for "SPECIALTY ITEMS," both listed at a replacement-cost value of $500.00.  The second entry had a notion: "ALLOW IF DAMAGED BY COVERED PERIL."  (*Id.*).  The "contents" estimates also included an "R&R Refrigerator - compact (undercounter)," with the notation: "ALLOW IF DAMAGED BY COVERED PERIL."  (*Id.*).  The "other structures" estimates included charges for "R&R Wood fence 5'-6' high - cedar," "Wood fence 5'-6' high - treated," "R&R Welded-wire mesh fence - 4' high - 12 gauge," and "Wood fence 5'-6' high - cedar."  (*Id.* at 5–6).

3

> Contact us immediately if additional damages are found or if your
> contractor estimate is higher than the Safeco estimate and we will
> work with you and your contractor to confirm how these factors
> might change our estimate.   It is important that we have the
> opportunity to address additions or changes to the estimate before
> you have those repairs completed, otherwise the policy may not
> provide coverage for the additional expenses.

(*Id.* at 2).

A check dated October 6, 2008 in the amount of $129.80 was sent to the Boones separately.
(Docket Entry No. 22, Ex. A-2).   A notation on the check and on the check stub shows that $11.27
was paid to repair "other structures" and $118.53 was paid for "contents."   (*Id.*).   There is no
evidence that the Boones later sought or obtained the recoverable depreciation shown on the
estimate.

In response to Safeco's motion to compel appraisal, the plaintiffs submitted Donna Boone's
affidavit. (Docket Entry No. 22, Ex. A).   Donna Boone stated that during the inspection, Echols told
her that Safeco would pay for the food that had spoiled or half the fence, but not both.   Subsequent
conversation revealed that Safeco had a policy to pay for only half an exterior fence, regardless of
which neighbor paid for it or on whose property it was located.   According to Donna Boone's
affidavit, shortly after the Safeco check and estimate were sent, she "spoke with Mr.
Echols . . . about the payment and stated the amount was completely inadequate to repair the
damages.  I again explained that my husband and I had paid for all of the fence ourselves and that
Safeco should pay to replace the entire fence.  Again Mr. Echols told me that it did not matter." (*Id.*
at 2).  The affidavit continued:

> Around the same time I obtained several bids to repair the fence, one
> of which was for approximately $8,000.00, but I did not submit these
> because Safeco never asked me to and indicated that they would not
> pay any more on my claim no matter what estimates I had obtained.

4

> I made several phone calls during that time period to contest the
> estimate and amount paid but was told that the $129.80 was all I was
> going to be paid.  At some point, I assumed Safeco was rejecting the
> remaining damages because they refused to pay any further or in any
> way address the disputed damages.  Safeco indicated that the file was
> closed and nothing more would be done.

(*Id.*).

Safeco's claim file reflects only one telephone call from Donna Boone, on October 7, 2008.

(Docket Entry No. 34, Ex. C).  The file entry states that Boone called to ask about the $3,000.00

claim for food spoilage and was told that the policy did not cover that loss.  (*Id.*).  Donna Boone's

affidavit statement that she made "several phone calls . . . to contest the estimate and amount paid"

conflicts with Safeco's records showing only one telephone call shortly after the estimate and check

were sent.  But counsel for Safeco agreed at the hearing held on May 7, 2010 that the court could

assume that these fact statements in Boone's affidavit were true in deciding the motion to compel

appraisal.

It is undisputed that Boone did not provide Safeco with a copy of the $8,000.00 contractor

estimate she obtained for the fence repair.  It is also undisputed that Donna Boone did not tell Safeco

the amount of the contractor estimates she and her husband obtained for repairing the fence or the

amounts they paid for the repairs.  It is undisputed that Boone did not send Safeco any written

demand for payment of a larger amount of policy proceeds than the October 2008 check or seek any

payment for depreciation.  Based on Safeco's counsel's statement at the hearing that this court

should take the fact statements in Boone's affidavit as true in deciding this motion, it is assumed as

true that Boone made "several phone calls" to Safeco during the October 2008 period to "contest

the estimate and amount paid."  It is assumed as true that in the telephone call Donna Boone made

to Echols after the receipt of the estimate and payment, she explained that Safeco should pay the

entire cost to replace the fence, not just half, because she and her husband had paid to build it, and Echols responded that "it did not matter."  It is assumed as true that in Donna Boone's telephone discussions with an unidentified person at Safeco contesting the estimate and amount paid, she was told that the $129.80 was all she was going to be paid and that "the file was closed and nothing more would be done."  (Docket Entry No. 22, Ex. A).  There is no indication that Boone was told she could not submit invoices she obtained from contractors.  There is no indication that Boone was told that she would not be paid for the depreciation identified as recoverable in the estimate and letter Safeco had sent.

The record shows that from October 2009 to April 2009, there was no further communication between the Boones and Safeco.  The Boones did not seek payment of the recoverable depreciation that was withheld from the October 2008 check.  On April 21, 2009, the Boones sued Safeco and its adjuster, Echols, in Texas state court, alleging that Safeco wrongfully denied their claims. (Docket Entry No. 1, Ex. D).  The Boones asserted claims for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, common law fraud, and conspiracy to commit fraud.

Safeco timely removed based on diversity jurisdiction, (Docket Entry No. 1), and filed an answer, (Docket Entry No. 11).  In its answer, Safeco included a verified plea in abatement and a motion to compel appraisal.  (*Id.* at 5).  The Policy's appraisal provision reads as follows:

**Appraisal.**  If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal.  Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred.  The two appraisers will . . . set the amount of loss, stating separately the actual cash value and loss to each item.

If the appraisers fail to agree, they will submit their differences to the umpire.  An itemized decision agreed to by any two of these three and filed with us will set the amount of loss.  Such an award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

(*Id.*) (emphasis omitted).[2]

This court granted Safeco's plea in abatement and stayed the proceedings until sixty days after the Boones provided Safeco with proper written notice under the Texas Insurance Code. (Dcoket Entry No. 23).  After the notice was sent and the stay expired, at a status conference in February 2010, this court granted the Boones' motion for leave to file an amended pleading and a response to Safeco's motion to compel appraisal.  (Docket Entry No. 26).  The parties agreed to mediate and stipulated that if mediation failed to resolve the case, the parties would be in the same position with respect to appraisal that they were in before mediation.  (*Id.*).

After an unsuccessful mediation, Safeco renewed its request for appraisal and moved for leave to file a brief in support of its previously filed motion to compel.  The motion was granted. (Docket Entry No. 35).  Safeco has filed a motion to compel appraisal and a brief.  (Docket Entry

---

[2]  The full policy is not included in the record.  The language relevant to this motion is set out in Safeco's answer.  The parties do not dispute the content of the appraisal clause.

Nos. 11, 34). The Boones have responded and filed two supplemental briefs in opposition. (Docket Entry Nos. 22, 28, 37).   The parties presented argument before the court at a status conference in May 2010.  (Docket Entry No. 36).  The issue is waiver.

## II.    The Applicable Law

Texas insurance policies frequently include provisions specifying appraisal to resolve disputes about the amount of loss under the policy. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888–89 (Tex. 2009).  "An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.'"  *Id.* at 895 (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)).  The contractual right to appraisal may be waived.  *See, e.g.*, *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333, at *4 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).  Waiver is defined as the "intentional relinquishment of a known right."  *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (summary calendar) (unpublished).  Courts applying Texas law follow the standard articulated long ago in *Scottish Union & Nat. Ins. Co. v. Clancey*, 8 S.W. 630, 632 (Tex. 1888),[3] to determine whether an insurer's acts amount to waiver: "To constitute waiver, the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed.  The acts relied on must amount to a denial of liability, or a refusal to pay the loss."  *See, e.g.*, *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2010 WL 1186323, at

---

[3] Other cases quote similar language from *Scottish Union & Nat. Ins. Co. v. Clancey*, 18 S.W. 439, 441 (Tex. 1892): "[T]he acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him." *See, e.g.*, *JM Walker LLC*, 356 F. App'x at 748; *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010).

*4 (N.D. Tex. Mar. 26, 2010); *In re §. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 2010 WL 1236333, at *6.

A delay in invoking appraisal may also constitute a waiver if the delay is long enough to "show an intention to yield the known right." *Sanchez*, No. H-09-1736, 2010 WL 413687, at *4 (quoting *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)); *see also In re §. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5 ("Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding circumstances." (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam))). Neither the policy's appraisal clause nor Texas law provides a deadline for invoking appraisal.[4] A demand for appraisal must be made within a reasonable time from the point at which the insurer is on notice that there is "a disagreement over the amount of damages, that is, the point of impasse with the insured." *Sanchez*, No. H-09-1736, 2010 WL 413687, at *5; *accord In re §. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5; *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333, at *5. An insurer may waive appraisal by waiting an unreasonable time to invoke appraisal after impasse is reached on the amount of loss. *Sanchez*, No. H-09-1736, 2010 WL 413687, *4–5. The appropriate inquiry when an insured argues that the insurer's delay waived its appraisal right is when the insurer knew the appraisal clause could be invoked and whether it timely reacted to that knowledge. *See Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009); *Cmty. Bank v. BancInsure, Inc.*, No. 2:09-cv-125-TJW, 2010 WL 1068193, at *3 (E.D. Tex. Mar. 22, 2010).

---

[4] Although the policy in this case has not been included in the record, there is no indication from either party that the appraisal clause specifies a deadline by which either party must request appraisal.

9

Waiver is an affirmative defense, and the party alleging waiver has the burden of proof. *JM Walker LLC*, 356 F. App'x at 748; *Sanchez*, No. H-09-1736, 2010 WL 413687, at *4. Whether a party waived appraisal is a question of law. *JM Walker LLC*, 356 F. App'x at 748; *see also Sanchez*, No. H-09-1736, 2010 WL 413687, at *4 (holding that although waiver is typically a fact question, when the relevant facts are undisputed and clearly established, a court may decide whether a party has waived its contractual right to appraisal as a question of law); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333, at *4 (same).

## III. Analysis

The Boones argue that Safeco waived its right to appraisal or that Safeco committed an anticipatory breach of the insurance contract, precluding a demand for appraisal. (Docket Entry No. 21). The Boones assert two grounds for waiver: (1) denial of coverage; and (2) untimely request. Each ground is analyzed below.

### A. The Argument that Safeco Waived Appraisal by Denying the Insureds' Claims

The Boones allege that Safeco "unconditionally denied" some of their claims and that the denial waived Safeco's right to seek appraisal. The Boones primarily rely on three cases: *de Laurentis v. United Services Automobile Association*, 162 S.W.3d 714 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Womack v. Allstate Insurance Co.*, 296 S.W.2d 233 (Tex. 1956); and *In re Acadia Insurance Co.*, 279 S.W.3d 777 (Tex. App.—Amarillo 2007, no pet.).

In *de Laurentis v. Unites Services Automobile Association*, the insured's property was damaged from a water leak that led to mold intrusion. 162 S.W.3d at 716. The insurer denied coverage for mold-related losses but admitted coverage for losses related to the initial water leak. *Id.* at 717. The insurer asked the insured to submit an inventory of the personal property damaged by the water. *Id.* The insured refused and filed suit, alleging breach of the insurance contract and

10

asserting extracontractual claims. *Id.* The insurer argued that the policyholder's refusal to provide a written inventory of damaged property amounted to a failure to comply with a condition precedent, precluding her suit. *Id.* at 719. The court held that the inventory provision was for the benefit of the insurance company and was waived because the insurance company had denied the claim for mold-damaged property on several occasions. "[A] reasonable policyholder would have considered the filing of an inventory an exercise in futility." *Id.* at 720–21.

*Womack* was an action by alleged third-party beneficiaries of an insurance policy who sued the insured driver. 296 S.W.2d 233, 234 (Tex. 1956). Two days before the underlying suit was filed, the insurance company wrote the insured, stating that the insurance contract was void and disclaiming any liability for the accident. *Id.* at 236–37. In the coverage suit, the insurer claimed that the insured had failed to comply with the condition precedent of giving notice of the suit and forwarding every summons or other process. *Id.* The Texas Supreme Court held that the insurer's unconditional denial of liability waived the policy's notice requirement. "An insurance company cannot deny *all* liability under a contract of insurance and then be heard to say, after it has repudiated the contract, that assured should have given it notice when the action was instituted, so that it could have defended the action in accordance with the terms of the contract." *Id.* at 237 (emphasis added).

In *In re Acadia Insurance Co.*, the insurer denied all liability on the basis that the property damage predated the inception of the insurance policy. 279 S.W.3d 777, 778–79 (Tex. App.—Amarillo 2007, orig. proceeding). When the insured sued, the insurer invoked the policy's appraisal clause. The trial court denied a motion to compel appraisal. The Texas Court of Appeals denied a writ of mandamus and held that the trial court had not abused its discretion because the insurer "intentionally and unequivocally relinquished the right [to an appraisal] so that it could

11

challenge coverage and, thus, waived that right."  *Id.* at 780.

These cases are factually and legally distinguishable because they involve an insurer's decision to deny all coverage for the claims under the policy.  The Texas Supreme Court's recent opinion in *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009), makes clear that an insurer may dispute the extent of coverage and deny certain claims without waiving the right to appraisal.  *See id.* at 893 (holding that the insurer could not "avoid appraisal . . . merely because there might be a causation question that exceeds the scope of appraisal"); *id.* at 894 (noting that appraisers can "decide the cost to repair each [loss] without deciding who must pay for it"); *id.* at 895 ("[U]nless 'the amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts.").  The position the Boones urge—that the insurer's recognition of some but not all of the damages claimed by the insureds as covered and refusal to pay the full extent of the amounts demanded waives appraisal—is contradicted by the Texas Supreme Court's opinion in *Johnson*.  Safeco's initial estimate and check and the evidence as to the further conversations with Donna Boone did not waive its right to invoke appraisal under the policy.

To the extent the Boones maintain that Safeco waived appraisal by anticipatorily breaching the contract, that argument is unpersuasive.  At least one Texas court has explicitly rejected breach of contract as a ground for finding that an insurer has waived its right to seek appraisal.  *See In re §. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *6 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication) ("We do not believe that any alleged breach of the policy by Security amounts to a waiver of its right to appraisal.").  As another court in this district recently explained: "[I]f insureds could escape appraisal by merely alleging an anticipatory breach (or repudiation) whenever there is a dispute over coverage or claims

12

handling, appraisal clauses would be virtually a nullity.  Such a result is in direct contravention of the strong public policy in favor of enforcing such clauses." *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *8 n.10 (S.D. Tex. Jan. 27, 2010).  An insured arguing that the insurer waived its right to enforce appraisal by failing to comply with another policy provision must show that these failures constituted an intentional relinquishment of the right to seek an appraisal by evidencing an intent to dispense with the policy's requirements that enable the insurer to arrive at the amount of loss.  *See JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (summary calendar) (unpublished) (citing *Scottish Union & Nat'l Ins. Co. v. Clancey*, 18 S.W. 439, 440–41 (1892)).  The alleged breaches by Safeco do not show waiver and do not preclude its invocation of appraisal.

**B.     The Argument that Safeco Waived Appraisal by the Delay in Invoking It**

Several recent cases from Texas appeals courts and from this district discuss the effect of an insurer's asserted delay in invoking appraisal provisions under Texas law.  The cases include *Sanchez v. Property & Casualty, Insurance Co. of Hartford*, No. H-09-1736, 2010 WL 413687 (S.D. Tex. Jan. 27, 2010); *In re Slavonic Mutual Fire Insurance Association*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333 (Tex. App.—Houston [14th Dist.] Apr. 1, 2010, orig. proceeding); *In re Security National Insurance Co.*, No. 14-10-00009-CV, 2010 WL 1609247 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication); and *Laas v. State Farm Mutual Automobile Insurance Co.*, No. 14-98-00488-CV, 2000 WL 1125287 (Tex. App.—Houston [14th Dist.] Aug. 10, 2000, pet. denied) (not designated for publication).  The Fifth Circuit has also recently addressed the effect of delay in invoking appraisal, applying the same principles that inform Texas law.  *See Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284 (5th Cir. 2009).  These cases are addressed below.  They raise two sets of waiver

13

issues.  The first set of issues is when the "reasonable period" for invoking appraisal begins to run,

that is, when the point of impasse over the amount of damages is reached.  The second set of issues

is what is a "reasonable period" of delay in invoking appraisal after litigation begins.

The Boones rely heavily on *Sanchez v. Property & Casualty, Insurance. Co. of Hartford*,

which addressed both sets of issues.  In that case, the court held that the insurance company had

waived its contractual appraisal right by the delay in invoking it.  The insured in *Sanchez* submitted

claims under his homeowners policy for hurricane damage to his back door, a pipe stack on his roof,

exterior bricks, and interior sheetrock.  No. H-09-1736, 2010 WL 413687, at *1.  The claims

adjuster concluded that some of the damage was not covered, either because it was not caused by

wind from the hurricane or because it was ordinary wear and tear.  *Id.*  The adjuster concluded that

the covered damage attributable to the hurricane was below the insured's deductible and denied the

claim.  *Id.*  The insurer notified the insured by letter on October 31, 2008 that there would be no

payment.  *Id.*  On November 1, the insured called the adjuster to dispute the repair estimate.  The

evidence was that the insured told the adjuster the following:

> I told [the adjuster] that I did not agree with her adjustment and that
> I was not satisfied with her adjustment.  I further stated that she must
> have forgotten to include the damages to the structure like cracks in
> the brick and walls.  She said she did not forget, but instead had
> excluded those items from her estimate because they were not caused
> by Hurricane Ike.  She believed the damages to the brick and walls
> were caused from wear and tear or lack of maintenance.  I told her
> that my home had been in good shape before Hurricane Ike and did
> not have any of these damages.  [The adjuster] said she was sorry and
> there was nothing further she could do.

*Id.* at *2.  The insured called the insurance company that same day and cancelled his policy,

explaining that he was "angry with [the insurer's] handling of [his] Hurricane Ike claim and that [the

insurer] had unfairly denied [his] claim."  *Id.*  The insurer did not dispute the insured's account.  *Id.*

14

n.4.

For six months after the call, nothing happened.  The insured then sued in state court and provided the required notice under the Texas Insurance Code.  *Id.*  The insurer removed to federal court on the basis of diversity jurisdiction.  Two months after removal, the insurer filed an unopposed motion to abate, arguing that the notice provided was deficient.  The insurer also sought abatement to pursue mediation.  The court granted the motions but mediation was ultimately unsuccessful.  The court reinstated the case to the active docket.  The insurer invoked the appraisal clause in a letter to the insured approximately one month later.  When the insured objected to appraisal, the insurer filed a motion to abate and to compel participation in the appraisal process set out in the insurance contract.  *Id.* at *3.  The insured responded that the insurer waived appraisal by failing to make a timely request and committed an anticipatory breach of the insurance contract, relieving him of the contractual obligation to submit to appraisal.  The court held that the insurer waived appraisal by its untimely demand.  *Id.* at *8.

The court held that the insurer was on notice of "a disagreement over the amount of damages, that is, the point of impasse with the insured," on November 1, the date of the insured's phone call stating that he was dissatisfied with the adjustment, the adjuster's response that there was "nothing further she could do," and the insurer's call cancelling the policy because of the claim denial.  *Id.* at *5.  The court also addressed the effect of the insurer's failure to invoke appraisal for over four months after the insureds filed suit.  The insurer waited three months after suit was filed before requesting mediation and then five more weeks before requesting appraisal after mediation failed.  *Id.* at *8.  In total, the insurer waited ten months after the "impasse" over the amount of the damages the policy covered.  *Id.*  The court held that the ten-month delay, in the absence of evidence that the delay "could be interpreted as anything other than an intentional relinquishment of its known right

15

to invoke a contractual dispute resolution provision," waived the right.  *Id.*

A Texas Court of Appeals recently distinguished *Sanchez*.  In *In re Slavonic Mutual Fire Insurance Association*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding), the insureds reported a claim under their homeowners policy on September 14, 2008, shortly after Hurricane Ike.  *Id.* at *2.  The insurance company subtracted depreciation and the deductible and on October 10 issued a check, which included a sum for roof repairs.  On October 17, the insureds notified the insurer that their roofer wanted to replace the entire roof and their homeowner's association would not permit a partial replacement.  *Id.* at *3.  The insurer arranged for another adjuster to inspect the property.  When that occurred in December, the inspector found that the roof had been completely replaced.  *Id.*  The insureds submitted receipts for the new roof and for air-conditioning duct work at a cost approximately $6,000 more than the insurer had included in the October check.  The insurer paid for the duct work but on January 16, 2009, sent a letter explaining that the complete roof replacement was not justified because of the limited area of damage.  *Id.*  After five months of silence, the insured filed suit and served the petition and notice letter on the insurer in May 2009.  Six days after service, the insurer invoked appraisal.  *Id.*  After receiving no response from the insureds, the insurer filed a plea in abatement and a motion to compel appraisal.  The insured responded that the insurer had waived appraisal.  The trial court agreed and denied the insurer's motion to compel appraisal.  *Id.*  The insurer filed a mandamus proceeding, seeking to have the trial court directed to compel appraisal.  The Texas Court of Appeals granted the relief sought, holding that the trial court abused its discretion in finding waiver.  *Id.* at *6.

The *Slavonic* court agreed with the *Sanchez* court that the date of the insurer's disagreement with the insured's decision about the amount of damages is the "point of reference to determine

16

whether a demand for an appraisal is made within a reasonable time." *Id.* at *5. The *Slavonic* court held that the fall 2008 exchanges and the January 2009 letter from the insurer stating that it would pay for the added duct work but would not cover the cost of replacing the entire roof because the extent of damage did not warrant this step did not establish impasse triggering the time for invoking appraisal. Instead, the date of disagreement or impasse was when the insured sent the demand letter in May 2009 rejecting the insurer's January 2009 determination of the claim. The insurer invoked appraisal six days after receiving the demand letter, which was reasonable. *Id.*

The *Slavonic* court relied on *Laas v. State Farm Mutual Automobile Insurance Co.*, No. 14-98-00488-CV, 2000 WL 1125287 (Tex. App.—Houston [14th Dist.] Aug. 10, 2000, pet. denied) (not designated for publication). In that underinsured-motorist insurance coverage case, the insurer invoked appraisal eighteen months after the insureds first filed a claim. *Id.* at *7. The court held that appraisal was timely invoked. The court noted that the parties had negotiated the value of the insured's car from July 1993 until the insured made their "final demand" in a letter to the insurer in October 1993. *Id.* Nine days after that letter, the insurer responded that it disagreed with the insured over the vehicle's value and demanded an appraisal. The court held that the insured did not meet its burden of showing a disagreement or impasse before the insured's written demand and the insurer's rejection. *Id.*

After *Laas*, *Sanchez*, and *Slavonic*, the Texas Court of Appeals granted a petition for a writ of mandamus reversing a trial court's refusal to abate a case pending appraisal on the basis of waiver. In *In re Security National Insurance Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *4 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication), the trial court denied the insurer's motion to compel appraisal based on waiver. In that case, the insured had invoked appraisal by letter from its counsel on January 22, 2009, three days

17

after submitting its proof of loss due to Hurricane Ike to its insurance company. *Id.* at *1. The letter stated that appraisal was demanded because of "an inability to reach agreement on the amount of loss." *Id.* at *1 n.1. About a month later, the insured informed the insurer that it was no longer pursuing appraisal because an investigation into the damage extent was continuing. *Id.* at *2. In March 2009, the insured's restoration contractor sued the insured for nonpayment of fees relating to the restoration of the property. The contractor asserted that there had been an assignment by the insured of the policy proceeds. *Id.* The insurer filed an interpleader action, depositing the undisputed portion of the loss, and sought a declaratory judgment in state court due to the competing claims to the proceeds. The insured counterclaimed against the insurer, disputing the amount of proceeds paid. *Id.* Less than a month after the insured filed its counterclaim, the parties began mediation. *Id.* at *3. Eleven days later, the insurer invoked appraisal by letter. *Id.* The insurer reiterated its appraisal request in a letter less than one month later. The next day, the insured replied that it would refuse appraisal. *Id.* at *4. The parties attended a second day of mediation eleven days after the insured's refusal. The insurer filed a motion to compel appraisal approximately one month after the mediation. The trial court denied the motion on the basis of waiver. The court of appeals found an abuse of discretion in the finding of waiver. *Id.* at *7.

The appellate court held that the date of disagreement or impasse was the date on which the insured sent a letter invoking the appraisal clause—January 22, 2009—three days after submitting the proof of claim. *Id.* at *5. But the court rejected the insured's argument that the insurer had waived appraisal by failing to object when the insured withdrew from the appraisal process or by failing independently to invoke appraisal at that point. *Id.* The court held that under the facts and circumstances, the insurer independently asserted its right to appraisal within a reasonable time. The court emphasized that the parties had continued to exchange information on the damage amounts

from January through June 2009. *Id.* at \*6. Neither such attempts to ascertain the amount of damage nor efforts to settle through mediation waived appraisal. Filing the interpleader did not waive appraisal because the interpleader dealt with conflicting claims to the undisputed portions of the proceeds. Filing the declaratory judgment as to coverage did not waive the right to appraisal as to damages disputes. *Id.* The court conditionally granted the petition for writ of mandamus. *Id.* at \*7.

The Fifth Circuit recently held that there was no waiver of an appraisal provision even though the insurer invoked it for the first time shortly before trial. That case, *Dwyer v. Fidelity National Property & Casualty Insurance Co.*, 565 F.3d 284 (5th Cir. 2009), involved a claim under a flood policy for damage due to Hurricane Katrina. The insurer inspected and paid the policy limit for contents and the estimated repair costs less depreciation for flood damage to the building. *Id.* at 285. The insured responded in February 2006 with a letter to the flood insurer and its homeowners policy insurer stating that a contractor's estimate to repair the house was $100,000 more than the combined amounts paid by the flood insurer and the homeowner's insurer combined. *Id.* at 285–86. The insured demanded an additional amount from both insurers, stating that the contractor could not distinguish between wind and flood damage. In response, the insurer told the insured to contact the adjuster, but there was no further communication until August 2006, when the insured sued. *Id.* at 286. The appraisal provision was invoked shortly after the insurer provided an expert witness disclosure that included a detailed repair estimate from a contractor. This estimate revealed that the only dispute was about the cost of doing the repair work, not about the scope of coverage. *Id.* The appellate court reversed the trial court's refusal to order appraisal. *Id.* at 290.

The appellate court held that the appropriate waiver inquiry was "when [the insurer] knew that the appraisal clause could be invoked [and] whether it reacted timely to the knowledge." *Id.*

at 288.  The insurer first learned that the insureds disputed the amount of loss, not coverage or other issues, on the date the contractor's estimate was received in the expert witness disclosure.  *Id.* Shortly after this clarification that the insureds challenged only the amount of costs estimated by the adjuster, the insured sought appraisal.  "In the context of the ongoing litigation, [the insurer] raised the issue of appraisal in a timely fashion."  *Id.*

From these cases, it is clear that the issue is the reasonableness of the delay in invoking waiver after the insurer is on notice that the insured disputes the amount of the loss and that an impasse has been reached.  The first question is the date that occurred.  The Boones claim that impasse occurred in October 2008.  They rely on the statements in Donna Boone's affidavit that she told the adjuster that "the amount [tendered by the insurer] was completely inadequate to repair the damages" and that she and her husband had paid for the fence and Safeco should replace it entirely, and that the adjuster responded that it did not matter.  The Boones also rely on the statements in the affidavit that Donna Boone made several other phone calls "to contest the estimate and amount paid" and was told that the $129.80 was all that would be paid.  (Docket Entry No. 22, Ex. A).  At oral argument, Safeco agreed that the court could disregard the presence in the insurance file of only one call contesting coverage for food spoilage, conflicting with Boone's description of the number and subject of her calls.  (Docket Entry No. 34, Ex. C).  But it is unclear how to resolve the difference between Boone's statement that she was told that what was clearly identified as an initial payment of $129.80 was "all" that "was going to be paid" and the documents she received clearly stating that Safeco would also pay depreciation except for the fence repair.  (Docket Entry No. 22, Ex. A-1). It is also unclear whether Donna Boone's conversations with the adjuster or the unidentified person at Safeco included any topic other than whether Safeco would cover the cost of replacing the entire fence as opposed to only half.  The dispute over the fence was not about the amount it was damaged

or how much it would cost to replace but rather whether Safeco would apply its general rule of paying only half the replacement cost for any exterior fence.

The factual statements in Donna Boone's affidavit, assumed to be true, are not enough for this court to determine whether Safeco was on notice that in October 2008 the Boones contested the amount of loss or damage from the hurricane. Donna Boone's affidavit provides facts similar to those in *Sanchez*, in which the insured called the adjuster to complain about the adjustment. *See Sanchez*, No. H-09-1736, 2010 WL 413687. In this case, as in *Sanchez*, according to Donna Boone's affidavit, in the telephone call, the insurer stated that it would not pay more. That fact was important in the *Sanchez* court's finding that as of that date, the insurer had made its final decision and impasse had been reached. There are, however, differences between the facts in *Sanchez* pertinent to presuit delay and the facts of this case. The record in this case includes the insurer's letter to the insureds not only inviting them to submit higher estimates for the repair work but also to submit claims for recoverable depreciation. Donna Boone did neither. In *Sanchez*, it was clear that the insurer would pay no more. No. H-09-1736, 2010 WL 413687, at *1. In *Sanchez*, it was clear that the disagreement between the insurer and the insured was about the amount of the loss resulting from the hurricane. It is unclear from the present record if the disagreement between Boone and Safeco was about the amount or extent of loss from the hurricane, which would trigger the appraisal right, or about who should pay for replacing the entire exterior fence, which would not trigger any appraisal issue because that is not a dispute about the extent or amount of the loss. *See Dwyer*, 565 F.3d at 288 (appraisal right was triggered when the insurer first learned that the insured disputed only the amount of loss, not coverage or other issues).

The facts of *Slavonic* are also distinguishable. In *Slavonic*, as in *Laas*, the court held that the date of disagreement was the date of the insureds' final demand letter to the insurer. In *Slavonic*,

21

the insureds had disagreed in January 2009 with the insurer's decision not to replace the entire roof because the insurer did not believe the extent of damage warranted it.  After the January 2009 letter disagreeing with the value the insurer assigned for the loss amount, the insurer reinspected the roof and added reimbursement for ductwork to the loss amount, while again refusing to replace the entire roof.  The insureds then did nothing for five months, until they filed the demand letter and lawsuit.  The court held that impasse was not reached until the insureds' demand letter rejecting the insurer's determination of the claim.  *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, No. 14-09-01057-CV, 2010 WL 1236333, at *3.  In the present case, by contrast, the record shows that after the insurer sent its estimate and check, Donna Boone made several telephone calls contesting the amount paid, though it is unclear whether she stated she disagreed with Safeco's coverage conclusions or with the estimate of loss.  There is no indication that Safeco responded by offering a revised amount and that the Boones were silent until they filed suit.  *Slavonic* does not support Safeco's argument that in this case, impasse did not occur until the Boones filed their lawsuit.

In these cases, the courts also examined the parties' conduct *after* the insured filed suit to determine whether the insurer waived appraisal.  *See, e.g.*, *Sanchez*, No. H-09-1736, 2010 WL 413687, at *8; *In re Slavonic Mut. Fire Ins. Ass'n*, No. 14-09-01057-CV, 2010 WL 1236333, at *5; *see also Dwyer*, 565 F.3d at 288 (noting in connection with insurance policies under the National Flood Insurance Program that appraisal clauses are "routinely invoked *during* litigation" (emphasis added)).  In *Sanchez*, for example, the court found waiver in part because the insurance company failed to seek appraisal for months after the insured filed suit.  The insurer removed from state to federal court, sought and was granted an extension of time to answer, sought abatement for insufficient statutory notice, and unsuccessfully mediated, all before mentioning appraisal.  *See* No. H-09-1736, 2010 WL 413687, at *2–3.  In *Slavonic*, the Texas Court of Appeals emphasized that

22

the court finding waiver in *Sanchez* had relied heavily on the insurer's postremoval delay in seeking appraisal.  *See In re Slavonic Mut. Fire Ins. Ass'n*, No. 14-09-01057-CV, 2010 WL 1236333, at *5 ("We find those facts distinguishable from the case before us, in which appraisal was invoked six days after receipt of the demand letter and service of the lawsuit.").  Other cases similarly hold that if there is no presuit waiver and the insurer invokes appraisal shortly after the insured files suit, there is no waiver.  *See In re §. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247 (conditionally granting mandamus directing the trial court to compel appraisal, which the insurer had invoked shortly after the insured filed suit, even though the insurer had been on notice of the dispute since three days after the insured filed its proof of claim); *In re Clarendon Ins. Co.*, No. 2-04-305-CV, 2004 WL 2984916, at *3 (Tex. App.—Fort Worth Dec. 23, 2004, orig. proceeding) (conditionally granting mandamus directing the trial court to compel appraisal when the insurer first invoked appraisal during discovery).

In this case, the insurer's postsuit conduct is different than in *Sanchez*.  Unlike the insurer in *Sanchez*, Safeco included a demand for appraisal in its answer—its first filing following removal—subject only to its right to proper notice under the Texas Insurance Code.  (Docket Entry No. 11 at 5).  Safeco thereafter maintained its demand for appraisal.  Before agreeing to mediation, the parties stipulated that by mediating, neither party waived its right to seek or oppose appraisal if that right existed before the mediation.  If mediation failed to resolve the dispute, the parties were in the same position with respect to appraisal as they were before mediation.  (Docket Entry No. 26).  Safeco did not "sit on its rights" after the Boones filed this suit.

In this case, the postlitigation conduct of the insurer does not support a waiver finding.  The record is insufficient to permit this court to decide whether as a matter of law the Boones have met their burden of showing that Safeco's presuit conduct waived its right to enforce the policy's

appraisal provision.  Safeco's motion to compel appraisal is denied, without prejudice to reassertion on a fuller record.

This conclusion is not lightly reached.  Appraisal is intended to make insurance disputes easier to resolve on an efficient and timely basis.  Litigating over appraisal, and worse yet, doing so without resolving the issue, defeats that purpose.  But on the present record, given the applicable case law, this court cannot determine that Safeco did, or did not, waive its appraisal right.

## IV.    Conclusion

Safeco's motion to compel appraisal is denied, without prejudice.  A status conference will be held at 10:30 a.m. on **June 21, 2010**, to address ways to expand the record on appraisal and other scheduling issues.

SIGNED on June 7, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

24